IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| MINUTEMAN SPILL RESPONSE, INC. | : | |
| | : | Case No. 4:14-01825 (JJT) |
| Debtor. | : | (regarding Dkt No.1208) |

**DEBTOR-OUT-OF-POSSESSION AND WEIR & PARTNERS LLP'S OBJECTION TO SECOND AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES TO KLEHR HARRISON HARVEY BRANZBURG LLP AS SPECIAL LITIGATION COUNSEL TO THE WILLIAM G. SCHWAB, CHAPTER 11 TRUSTEE**

Minuteman Spill Response, Inc., debtor-out-of-possession ("Debtor"), by its attorneys, Weir & Partners LLP, and Weir & Partners LLP ("W&P")(collectively the Debtor and W&P are referred to as the "Objectors") file this Objection to the Second and Final Interim Application for Compensation and Reimbursement of Expenses of Klehr Harrison Harvey Branzburg LLP ("Klehr") as Special Litigation Counsel to the Chapter 11 Trustee ("Application") and in support thereof sets forth the following:

1. Debtor is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a business address of 2435 Housels Run Road, Milton, PA 17847.

2. On May 14, 2015, William G. Schwab (the "Trustee") was appointed the chapter 11 trustee for the chapter 11 case of the Debtor (the "Case")[Dkt #632] to possess and manage the property of the estate of the Debtor ("Estate") and to operate the Debtor's business; William G. Schwab duly qualified as chapter 11 trustee on May 19, 2015 [Dkt #635].

3. The Debtor is now a chapter 11 debtor out-of-possession of the Estate and does not operate its business; but, remains a party-in-interest in this Case.

4. W&P is the counsel for the Debtor and an administrative creditor of the Estate.

5. On August 18, 2015 (not August 14, 2015 as stated in the Application), the Trustee filed an application to hire Klehr as special litigation counsel to the Estate in addition to the plethora of attorneys the Trustee had already hired including his own law firm, William G. Schwab & Associates ("S&A") and Flaster\Greenberg P.C. ("F\G"), as general bankruptcy attorneys to the Trustee ("Appointment Application")[Dkt # 807].

6. It is important to note that the Trustee has engaged not only Klehr, F\G and his own law firm as attorneys for the Debtor's estate in this Case; but also, the Trustee has hired a special civil rights counsel firm (Abramson & Abramson LLC), a criminal counsel firm (Gross McGinley LLP), and "unofficially" engaged malpractice counsel (Attorney Gibson).

7. Due to Jeffrey Kurtzman, Esq.'s withdraw from Klehr, the Trustee replaced Klehr as special counsel with Kurtzman|Steady, LLC.

8. In all, the Trustee still has engaged at least 5 different law firms in this Case.

9. According to the Appointment Application, Klehr was to be engaged as special litigation counsel to handle "bankruptcy litigation and other duties as requested by the Trustee, including responding to and attending the hearing on the Debtor's emergency motion to remove the Trustee and such other matters as the Trustee may request or require."

10. According to the Affidavit of Proposed Attorney sworn by Jeffrey Kurtzman, Esq. ("Mr. Kurtzman") attached to the Appointment Application, Klehr does not intend to engage in litigation in this Case that is adverse to M&T Bank because Klehr "represents M&T Bank in numerous matters unrelated to the Debtor or its Chapter 11 case."

11. M&T is the largest secured creditor and unsecured creditor in this Case and the Trustee already has F\G representing the Estate as ligation counsel in an adversary that had

already been filed against M&T Bank.

12. The Trustee has never explained why the Trustee is in need of a yet another law firm to be litigation counsel in this Case or why F\G or his own firm are unable to handle all of the litigation in this Case.

13. Inherently and inevitably, when a trustee engages multiple firms in a single case it results in duplication of efforts and multiple unnecessary conferences and communication to attempt coordinate the various activities of different law firms.

**KLEHR'S RATES ARE EXCESSIVE FOR THE MARKET PLACE.**

14. Klehr filed its First Interim Application for $31,227 for legal fee for the period from August 14, 2015 to January 8, 2016 ("First Fee Period") for 65.1 hours of services at a blended rate of $479.67. Klehr also sought $920.31 for reimbursements.

15. Klehr files this Application for an additional $8,894 in fees and $415.80 for reimbursements for the additional period from January 12, 2016 to April 5, 2016 ("Second Fee Period").

16. Over 95% of the hours charged during the First Fee Period and Second Fee Period are for Mr. Kurtzman's services.

17. Klehr seeks fees for Mr. Kurtzman's services at the "big city" rate of $490/hour, which is even higher than Mr. Giacometti's exorbitant 2015 rate of $475/hour[1] (which is now even more outrageous due to his firm's 2016 rate increase).

18. W&P believes that Klehr's billing rate for Mr. Kurtzman is excessive for this Case in this District and is not consistent with the market rates charged by professionals in the Middle District of Pennsylvania for similar services.

19. For the purpose of this Application, this District is the proper marketplace for this

---

[1] W&P is not suggesting that Mr. Giacometti was or is reasonable or within the market rate.

3

490273

Court to measure the reasonableness of Klehr's rates.

20. There is nothing about this Case or any of the litigation in this Case that requires unique legal skills or expertise that the Trustee's own law firm cannot either provide or that cannot be obtained from attorneys located within the Middle District of Pennsylvania or attorneys outside the District who are willing to charge rates that are consistent with the market rate in this District.

21. The Trustee, who by his own modest admission is one of the most highly respected and regarded legal professionals in the creditors' rights field in this District, charges $375/hour.

22. Robert Knupp, Esq. of Smigel, Anderson & Sacks, LLP who is a bankruptcy attorney of this District with almost 50 years of experience charged this Debtor $300/hour[2].

23. Objectors believe that the "market rate" for experienced legal professional in the Middle District of Pennsylvania does not exceed $425/hour.

24. The Third Circuit Court of Appeals and the Bankruptcy Code requires that the fee paid to a professional be measure by a market approach. *In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 853-56 (3d Cir.1994).

25. It is Klehr's burden to show that the rates it is charging the Estate are appropriate in this Case in this District. *In re Engel,* 124 F.3d 567, 573 (3d Cir.1997).

**KLEHR SHOULD NOT BE COMPENSATED FOR EXCESSIVE HOURS OR UNNECESSARY SERVICES.**

26. The services provided by Klehr are redundant to and overlap the services of S&A and F\G in this Case.

---

[2] W&P's bankruptcy partners charged the Debtor no more than $425/hour. Although Mr. Weir of W&P did charge .4 hours to this Case at $500/hour, Mr. Weir 's limited time was related to his interaction with Mr. Abramson's litigation outside the Western District. Since the Court discounted the W&P fee application by 20%, Mr. Weir's effective rate was $400/hour and the other partners' effective rates were no more than $340/hour.

4

490273

27. Even a cursory review of this Application will show that Mr. Giacometti was named or involved 14 times in Klehr's time entries. The Estate should not have to pay for Mr. Giacometti and Mr. Kurtzman's talks with each other if they are doing different services for the Estate.

28. The vast majority of Mr. Kurtzman's time charges are for matters that were not litigation; but rather general bankruptcy matters such as sale motions, cash collateral orders, engagement of other professionals, objections to debtor's disclosures statement, the auction, review of schedules, reviewing the Trustee's plan and disclosure, and other activities that are well within the expertise and skills of the Trustee's own firm or even F\G at a lower rate.

29. Although the redundancy and duplication of service is readily apparent from a review of the Application and description of the time entries, Klehr's narrative of its services in the Application does not explain why Klehr was even involved in those non-litigation services. Indeed, Klehr's Application only shows .25 hours for litigation services in the First Fee Period and none in the Second Fee Period.

29. Further, Mr. Kurtzman charged the Estate full rates for 10 hours of his time on August 31, 2016 to drive to and attend a hearing in Wilkes-Barrie on matters that did not involve his firm. Indeed, at that hearing, the Trustee was represented by two lawyers from F\G and a lawyer from the Trustee's own firm. Accordingly, Klehr seeks to be paid to attend the August 31 hearing in which Mr. Kurtzman provided no perceivable value to the Estate.

30. Amazingly, Mr. Kurtzman has billed for service related to criminal matters that were within the bailiwick of the Trustee's esteemed separate criminal counsel and was involved in matters regarding M&T Bank including a conference call with the bank's officer even though his firm has a conflict with its current representation of M&T Bank.

5

490273

Case 4:14-bk-01825-JJT    Doc 1223    Filed 04/29/16    Entered 04/29/16 10:22:51    Desc
Main Document    Page 5 of 7

31.     Additionally, Klehr's services regarding the Debtor's motion to remove the Trustee did not benefit the Estate and were solely to protect the Trustee personally from the resulting disqualification from all other trustee appoints if he was removed pursuant to Bankruptcy Code §324(b).

**KLEHR SHOULD NOT BE PAID FOR TIME PRIOR TO THE FILING OF THE APPLICATION TO EMPLOY.**

32.     Although the Trustee submitted a proposed Order with the Appointment Application that provided the engagement to relate back to August 14, 2015, the Application was not filed until **August 18, 2015**. The Appointment Application did not request or support a *nunc pro tunc* order pre-dating its filing.

33.     Nevertheless, Klehr has sought compensation of over $2000 for 1.25 hours on August 14, 2015 and 3.0 on August 16, 2015 that pre-date the filing of the Appointment Application.

**KLEHR SHOULD NOT BE COMPENSATED FOR EXCESSIVE EXPENSES.**

34.     Klehr seeks $920.31 to be reimbursed by the Estate.

35.     Of that amount, $368 is for photocopying at 25¢ per copy.

36.     Klehr's per copy charge is even higher than what F\G charged (15¢ per copy) or the 10¢ per page rate that the Trustee asserted was "the reasonable charge" for copies in his objection to W&P's final fee applications.

Wherefore, the Debtor and Weir & Partners LLP pray that this Court enter an appropriate Order reducing the hourly rate for Mr. Kurtzman's services to the "market rate" of not more than $425/hour and otherwise reducing the fee and reimbursement award in accordance with this Objection.

WEIR & PARTNERS LLP

BY: /s/ Kenneth E. Aaron
    Kenneth E. Aaron, Esquire
    Suite 500, The Widener Building
    1339 Chestnut Street
    Philadelphia, PA 19107
    (215) 665-8181
    Counsel for the Debtor and
    Weir & Partners LLP

Dated: April 29, 2016

490273

7

Case 4:14-bk-01825-JJT    Doc 1223    Filed 04/29/16    Entered 04/29/16 10:22:51    Desc
Main Document    Page 7 of 7